IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,   )
DEPARTMENT OF ENVIRONMENTAL     )
PROTECTION, STATE OF CONNECTICUT, )
STATE OF MARYLAND, STATE OF NEW  )
JERSEY, and STATE OF NEW YORK,   )
      Plaintiffs,              )
                                 )
      vs                       ) Civil Action No. 05-885
                                 )
ALLEGHENY ENERGY, INC.,          )
ALLEGHENY ENERGY SERVICE CORP.,  )
ALLEGHENY ENERGY SUPPLY CO., LLC, )
MONONGAHELA POWER COMPANY,       )
THE POTOMAC EDISON COMPANY, and  )
WEST PENN POWER COMPANY,         )
      Defendants.              )

## REPORT AND RECOMMENDATION

I. <u>Recommendation</u>:

      It is respectfully recommended that the defendants' motion to dismiss the plaintiffs' claims for relief 1-3, 6-9, and 12-26 in the first amended complaint (Docket No. 32) be denied.

II. <u>Report</u>:

      Presently before the Court is the defendants' motion to dismiss several of the plaintiffs' claims for relief asserted in the first amended complaint. For reasons discussed below, the defendants' motion to dismiss should be denied.

      The plaintiffs are the Commonwealth of Pennsylvania, Department of Environmental Protection, and the States of Connecticut, Maryland, New Jersey and New York. On January 17, 2006, the plaintiffs filed an amended complaint against defendants Allegheny

Energy Service Corp., Allegheny Energy Supply Co., LLC, Monongahela Power Co., The Potomoc Edison Co., and West Penn Power Co. (collectively, "Allegheny") for alleged violations of the Clean Air Act ("CAA"), 42 U.S.C. § 7401, et seq., the Pennsylvania Air Pollution Control Act (APCA"), 35 P.S. § 4001, et seq., and those Acts' implementing regulations.

The plaintiffs aver that Allegheny owns and operates several coal-powered power plants in Pennsylvania, including at Armstrong, Hatfield's Ferry and Mitchell (the "Plants"), where Allegheny undertook capital projects that had the effect of increasing its Plants' emissions. The plaintiffs complain that several projects undertaken by Allegheny at its Plants violated the CAA and Pennsylvania law, in that Allegheny modified and/or operated major emitting facilities at its Plants without applying for, or obtaining the preconstruction permits and/or operating permits required by the prevention of significant deterioration ("PSD") provisions of the CAA, and as required by the PSD and nonattainment new source review ("NNSR") regulations under Pennsylvania law. In addition, the plaintiffs contend that Allegheny reconstructed and operated two units at a major emitting facility without abiding by emissions limitations required under the new source performance standards ("NSPS") of the CAA, and as required under Pennsylvania law. Allegheny is also said to have reconstructed and operated major emitting facilities without obtaining preconstruction approval, or establishing the best available technology emission standards for the facilities, and without obtaining permits containing PSD, NNSR and NSPS emissions limitations as required under Pennsylvania law.

The plaintiffs assert that Allegheny operates its Plants without meeting the lowest achievable emission rate for both sulfur dioxide and nitrogen oxides and without obtaining emission offsets as required by PSD and NNSR requirements. According to the plaintiffs,

emissions of ozone-creating pollutants from Allegheny's Plants contribute to the formation of ozone in their states, which adversely affect the health of their residents and the quality of their water and air. The plaintiffs seek to permanently enjoin Allegheny from operating its Plants except in accordance with the CAA, the APCA and those Acts' implementing regulations. They also seek to assess civil penalties against Allegheny for each violation of applicable federal and state law. The Court's jurisdiction is invoked pursuant to 42 U.S.C. §§ 7604(a) and 7477, and 28 U.S.C. §§ 1331, 1355 and 1367.

In their first amended complaint, the plaintiffs assert 26 claims for relief based on Allegheny's alleged misconduct. Allegheny has moved to dismiss 22 of those claims, premised on grounds that many of the claims are barred by the applicable statute of limitations, violate the CAA's mandatory notice requirement, and cannot lie under the CAA's Title V operating permit program and corresponding Pennsylvania law.

With respect to Allegheny's assertion that several of the plaintiffs' claims are time-barred, it argues that claims 1, 7, 15, 17, 19 and 23 allege violations of certain permitting requirements under the CAA, which are governed by a five-year statute of limitations, 28 U.S.C. § 2462. Allegheny insists these claims are time-barred, as the plaintiffs did not commence this action within five years of the date the permit obligations were said to have been violated.

Allegheny also asserts that claims 2-3, 6, 8-9, 12, 16, 18, 20 and 24 allege violations of certain permitting requirements under Pennsylvania law, which are governed by a seven-year statute of limitations, 35 P.S. § 4010.3. Allegheny argues these claims are time-barred, as the plaintiffs did not commence this action within seven years of the date the alleged preconstruction permit violations should have been discovered.

In moving to dismiss claims 13-14, 21-22 and 25-26, Allegheny asserts they constitute collateral attacks on valid operating permits issued to them by the Pennsylvania Department of Environmental Protection, which cannot form the basis of a citizen suit under the CAA, as is brought here. Allegheny also argues that claims 25-26 are subject to dismissal, as the plaintiffs failed to comply with the mandatory statutory notice requirements of 42 U.S.C. § 7604.

Under the Federal Rules of Civil Procedure, a statute of limitations defense must be raised in the answer, since Rule 12(b) does not permit such a defense to be raised by motion. Robinson v. Johnson, 313 F.3d 128, 134-35 (3d Cir. 2002), cert. denied, 124 S.Ct. 48 (2003). However, as our Court of Appeals explained in Robinson: "the law of this circuit (the so-called 'Third Circuit Rule') permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Id. at 135. "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Id.

Here, Allegheny's statute of limitations defense is properly raised in its motion to dismiss, for it appears from the amended complaint that several of the plaintiffs claims may be time-barred. In reviewing a motion to dismiss, all well pleaded allegations of the complaint must be accepted as true and viewed in a light most favorable to the non-movant. Estelle v. Gamble, 429 U.S. 97 (1976); Shaev v. Saper, 320 F.3d 373, 375 (3d Cir. 2003).

Are several of the plaintiffs' claims time-barred?

We first examine Allegheny's argument that several of the plaintiffs' claims are barred by the applicable statute of limitations. The plaintiffs brought this action pursuant to the

CAA's citizen suit provision, 42 U.S.C. § 7604. Since the CAA has no specific statute of limitations provision, the five-year limitations period set forth in 28 U.S.C. § 2462 applies to claims 1, 7, 15, 17, 19 and 23, which seek civil penalties for alleged violations of the PSD provisions of the CAA. See, U.S. v. LTV Steel Co., 116 F.Supp.2d 624, 632 (W.D.Pa. 2000).[1]

In claims 1, 7, 15, 17, 19 and 23, the plaintiffs complain that Allegheny failed to comply with preconstruction permitting requirements when it made modifications to certain units at its Plants from 1993 through 1999. See, first amended complaint at ¶¶ 131-132, 195-196, 284-285, 306-307, 328-329 and 376-377. The plaintiffs seek both civil penalties and injunctive relief in these claims. Under the CAA, a claim alleging a failure to obtain a preconstruction permit accrues at the time of construction or modification at the facility. United States v. Brotech Corp., 2000 WL 1368023, * 3 (E.D.Pa., Sept. 19, 2000)(stating: "Violations of the various requirements to obtain construction permits or plan approvals occur at the time of the construction, modification, or installation of the equipment or facility"), citing Ogden Projects, Inc. v. New Morgan Landfill Co., 911 F.Supp. 863, 876 (E.D.Pa. 1996) ("a violation of the Part D permitting requirement occurs at the time of construction as the statute requires a preconstruction permit").

The plaintiffs filed their initial complaint in this matter on June 28, 2005. Thus, Allegheny argues the plaintiffs are barred from seeking civil penalties for preconstruction permit violations that occurred prior to June 28, 2000. As recited above, claims 1, 7, 15, 17, 19 and 23

---

1. It is provided in 28 U.S.C. § 2462:
   Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or property is found within the United States in order that proper service may be made thereon.

pertain to Allegheny's alleged failure to comply with preconstruction permitting requirements for modifications made at its facilities from 1993 through 1999.² Since these claims were not brought within five years of when they accrued, they are time-barred to the extent they seek civil penalties unless the statute of limitations was tolled.

The plaintiffs make two arguments in hopes of salvaging claims 1, 7, 15, 17, 19 and 23. First, they argue that the limitations period should be tolled, as Allegheny's failure to comply with preconstruction permitting requirements constitutes a continuing violation. However, the majority view is that "a violation of the Clean Air Act's preconstruction permit requirement is singular in nature, and does not constitute an ongoing violation." New York v. Niagra Mohawk Power Corp., 263 F.Supp.2d 650, 661 (W.D.N.Y. 2003) (citing cases espousing the majority and minority views). Among courts sharing the majority view that a failure to obtain a preconstruction permit is not a continuing violation are: United States v. Illinois Power Co., 245 F.Supp.2d 951, 957 (S.D.Ill. 2003) ("a violation of the Clean Air Act's preconstruction permit requirements ... occurs at the time of the construction or modification and is not continuing in nature"); United States v. Southern Ind. Gas & Elec. Co., 2002 WL 1760752, *4 (S.D.Ind. 2002) ("failure to obtain a preconstruction permit is a discrete violation that occurs at the time of construction"); United States v. Westavco, 144 F.Supp.2d 439, 443 (D.Md. 2001) ("preconstruction permit violations occur only at the time of the construction or modification of the emitting facility"); United States v. Murphy Oil USA, Inc., 143 F.Supp.2d 1054, 1083-84

---

2. See, claim 1 at ¶ 131 of the first amended complaint, alleging a 1995 modification; claim 7 at ¶ 195, alleging a 1994 modification; claim 15 at ¶ 284, alleging a 1997 modification; claim 17, at ¶ 306, alleging a 1993 and 1999 modification; claim 19 at ¶ 328, alleging a 1996 modification; and claim 23, at ¶ 376, alleging a 1994 modification.

(W.D.Wis. 2001) ("the statute of limitations for a violation of the preconstruction permit requirements ... begins to run at the time of construction and does not continue through the operational life of the modified source"); United States v. Brotech Corp., supra, 2000 WL 1368023, at *3 ("[v]iolations of the various requirements to obtain construction permits or plan approvals occur at the time of the construction, modification, or installation of the equipment or facility"); United States v. Campbell Soup Co., 1997 WL 258894, *2 (E.D.Cal. 1997) ("the regulation cannot reasonably be construed to mean that building or altering a machine without a permit is a violation that continues as long as the machine still exists or is operated").

We agree with the pervading view that failure to comply with the CAA's preconstruction permit requirements is a discrete event, which is not subject to the continuing violation doctrine. As explained in Niagra Mohawk:

> A given construction or modification project occurs only once. If a permit is not obtained for that particular project, then the preconstruction permit requirement of the Clean Air Act has been violated. However, the requirement to secure a preconstruction permit applies *prior* to construction or modification. Once the construction or modification is complete the window in which to apply for and obtain a preconstruction permit is gone.

263 F.Supp.2d at 661 (emphasis in original). Thus, we find that the continuing violation doctrine does not apply to the plaintiffs' claims 1, 7, 15, 17, 19 and 23.

The plaintiffs also insist that the "discovery rule" applies to claims 1, 7, 15, 17, 19 and 23. Arguing that the limitations period did not begin to run until they discovered Allegheny's violations of the CAA's preconstruction permit requirements, the plaintiffs rely on L.E.A.D. v. Exide Corp., 1999 WL 124473 (E.D.Pa., Feb. 19, 1999). In L.E.A.D., the Court

listed several policy concerns which compelled application of the discovery rule to claims under the Clean Water Act, 33 U.S.C. § 1365, including: (1) the difficulty of detecting violations, and (2) the reliance of governmental agencies on a system of self-reporting to enforce the Act; it then reasoned that the discovery rule should likewise apply to claims under the CAA. Id. at *4.

In United States v. Murphy Oil USA, supra, however, the Court rejected application of the discovery rule to CAA claims, except where a defendant takes affirmative acts to prevent discovery of its alleged permit violations, and the Court distinguished L.E.A.D. as follows: "The reasoning of L.E.A.D. is not convincing. The court failed to take into account an important difference between the Clean Water Act and the Clean Air Act; unlike the Clean Air Act, the Clean Water Act contains a provision that imposes a duty on the source to self-report the effluent that it is discharging. See, 33 U.S.C. § 1365(b)(1)(B). Only through these self-reports does the [EPA] or the public learn of violations of the Clean Water Act.... [T]he fact that the [Clean Air Act] does not rely exclusively on self-reporting makes the reasoning less persuasive." 143 F.Supp.2d at 1084. Nonetheless, in Murphy Oil USA, the Court opined:

> If it is determined at trial that defendant made affirmative
> efforts to prevent plaintiff from discovering the information
> that was necessary to discover defendant's alleged violations
> of the permit requirements under the Clean Air Act, plaintiff
> will be entitled to rely on the discovery rule to toll the statute
> of limitations. If this is not the case, plaintiff's request for
> penalties for [its] claims... will be dismissed as barred by the
> five year statute of limitations set forth in § 2462.

Id. at 1085.

In United States v. Nucor Corp., 1997 U.S. Dist. LEXIS 22994, *22-23 (N.D.Ala., Nov. 4, 1997), the Court agreed with the government that the discovery rule applies to CAA

claims, stating:

> The whole purpose in having new projects apply to [the state agency] for an air permit is to review the contamination potential and determine what violations are likely and what permits are necessary. By not submitting its facilities for review, Nucor made it virtually impossible for [the] government to 'discover' the violation... This court's refusal to apply the discovery rule would encourage violators to avoid the costly process of applying for a permit and take their chances of going undetected for five years. Once the time ran out, they would be protected by the statute if courts did not apply the discovery rule.

Based on the foregoing, in light of Allegheny's alleged failure to apply for PSD permits upon making modifications at its facilities, we cannot say at this juncture when the plaintiffs had notice of Allegheny's alleged permit violations. This presents a factual question that should not be resolved on a motion to dismiss. See, e.g., DIRECTV, Inc. v. Rodkey, 369 F.Supp.2d 587, 600 (W.D.Pa. 2005) (stating: "the date when the plaintiff first had a reasonable opportunity to discover [the offense] presents a genuine issue of material fact which cannot be determined by the Court on the [d]efendant's [m]otion to [d]ismiss").

Further, to the extent claims 1, 7, 15, 17, 19 and 23 seek injunctive relief for Allegheny's alleged misconduct, they are not time-barred. See, Freeman v. The Cincinnati Gas & Elec. Co., 2005 WL 2837466, * 2 (S.D.Ohio, Oct., 27, 2005) (ruling that "28 U.S.C. § 2462, by its terms, applies only to suits for civil penalties, and statutes of limitations historically do not control measures of equitable relief"); accord, United States v. Cinergy Corp., 397 F.Supp.2d 1025, 1031 (S.D. Ind. 2005) (noting that "[s]everal courts have refused to apply the statute of limitations to claims for injunctive relief in the [CAA's] enforcement suits"), citing New York v. Niagara Mohawk Power Corp., supra, 263 F.Supp.2d at 663 n.22; United States v. Illinois Power,

supra, 245 F.Supp. at 958 n.3; United States v. Westvaco, supra, 144 F.Supp.2d at 443 n.2. Thus, Allegheny's motion to dismiss as time-barred claims 1, 7, 15, 17, 19 and 23 should be denied.[3]

Allegheny also moves to dismiss as time-barred claims 2-3, 6, 8-9, 12, 16, 18, 20 and 24 of the first amended complaint. According to Allegheny, these claims are barred by the seven-year statute of limitations in 35 Pa.C.S. § 4010.3.[4]

In claims 2-3, 6, 8-9, 12, 16, 18, 20 and 24, the plaintiffs contend that Allegheny violated the APCA and Pennsylvania law when it made modifications to certain units as its Plants from 1993 through 1999, as it failed to comply with preconstruction permit requirements, and/or failed to apply for or obtain plan approval and operating permits, and/or failed to comply with emissions limitations based on use of the best available technology or meeting the lowest achievable emission rate. See, first amended complaint at ¶¶ 141-142, 145-148, 154, 156, 158,

---

3. We find no merit in Allegheny's argument that the plaintiffs' claims for injunctive relief should be dismissed pursuant to the concurrent remedy doctrine. Under the concurrent remedy doctrine, "equity will withhold its relief in such cases where the applicable statute of limitations would bar the concurrent legal remedy." Cope v. Anderson, 331 U.S. 461, 464 (1947). Even assuming, arguendo, that the plaintiffs' aforesaid claims for civil penalties were time-barred, the civil penalties and equitable remedies which the plaintiffs seek in their CAA claims are not concurrent. As explained by the Court in United States v. Cinergy Corp., supra: "the citizen suit provisions of the [CAA] create an equitable remedy to stop threats to the environment. Civil fines collected through a citizen suit must be paid to the United States, not to the citizens; thus, the primary purpose of civil penalties is deterrence, not reward to the Plaintiffs. (citations omitted). As a result of this distinction, the concurrent remedy doctrine does not operate to bar the Citizens' suit for injunctive relief." 397 F.Supp.2d at 1032. Accord, United States v. Am. Elec. Power Serv. Corp., 137 F.Supp. 2d 1060, 1068 (S.D.Ohio 2001). Thus, the concurrent remedy doctrine does not apply to claims 1, 7, 15, 17, 19, and 23 which seek injunctive relief.

4. It is provided in 35 P.S. § 4010.3: "The provisions of any other statute to the contrary notwithstanding, actions for civil or criminal penalties under this act may be commenced at any time within a period of seven (7) years from the date the offense is discovered."

161-162 , 185-190, 205-206, 208-212, 217, 219-225, 248, 250-252, 294-295, 297-301, 316-317, 319-323, 338- 339, 341-345, 386-387, 389-393. Under the applicable limitations period, these complained-of acts begin to run on "the date the offense is discovered." 35 Pa.C.S. § 4010.3.

In arguing that claims 2-3, 6, 8-9, 12, 16, 18, 20 and 24 are subject to dismissal under the discovery rule, Allegheny relies on a 2005 inspection guidance report of the Pennsylvania Department of Environmental Protection ("PADEP"), which provides that "evaluations at Title V facilities [are to occur] no less than once every two years" in conformance with the compliance monitoring strategy of the Environmental Protection Agency ("EPA").[5] Thus, Allegheny insists that PADEP knew or should have discovered its complained-of acts within two years of its modifications.

In the first amended complaint, claim 2 alleges a 1995 modification (at ¶ 141); claim 3 alleges a 1995 modification (at ¶ 154); claim 6 alleges a 1995 modification (at ¶ 185); claim 8 alleges a 1994 modification (at ¶ 205); claim 9 alleges a 1994 modification (at ¶ 217); claim 12 alleges a 1994 modification (at ¶ 248); claim 16 alleges a 1997 modification (at ¶ 294); claim 18 alleges a 1993 and 1999 modification (at ¶ 316); claim 20 alleges a 1996 modification (at ¶ 338); and claim 24 alleges a 1994 modification (at ¶ 386). According to Allegheny, since most of these claims were not brought within seven years of when they should have been discovered, they are time-barred.

We are not convinced these claims are time-barred. First of all, regulations implementing Pennsylvania's APCA provide: "Each day of continued violation and each violation of any provision of this act... shall constitute a separate offense and violation." 35 P.S.

---

5. See, Exhibit A to the defendants' brief in support of their motion to dismiss at pp. 2-3.

§ 4009.3. In the aforesaid claims brought under Pennsylvania law, Allegheny is said to have violated Title 25 of the Pennsylvania Code since the date it made modifications to its units. See, first amended complaint at ¶¶ 141-150, 154-164, 185-192, 205-214, 217-227, 248-255, 294-303, 316-325, 338-347, and 386-395. Further, while Allegheny insists that PADEP should have discovered its alleged misdeeds based on a 2005 internal guidance report which sets forth general guidelines for inspection frequencies, Allegheny has not shown that PADEP's 2005 guidance report has any relevance to inspections conducted from 1993 to 1999 when the complained-of modifications were made.

Based on the foregoing, and as Allegheny has not proffered facts establishing when discovery of the alleged offenses occurred, its motion to dismiss as time-barred claims 2-3, 6, 8-9, 12, 16, 18, 20 and 24 should be denied. See, EEOC v. Creative Playthings, 375 F.Supp.2d 427, 436 (E.D.Pa. 2005) ("a claim is not properly dismissed pursuant to a Rule 12(b) motion if there is a question of fact as to whether the claim was brought within the statute of limitations"), citing Hanna v. United States, 514 F.2d 1092, 1095 (3d Cir. 1975).

<u>Have the plaintiffs stated viable claims as to Allegheny's Title V operating permits?</u>

In claims 13-14, 21-22 and 25-26, the plaintiffs contend that in 1995, Allegheny submitted applications for Title V operating permits at three facilities which failed to provide information and requirements necessary to implement air pollution control standards, such that when Allegheny was issued Title V operating permits at those facilities, it operated them in violation of the CAA and Pennsylvania law. See, first amended complaint at ¶¶ 260-265, 271-276, 352-357, 363-368, 400-405, 411-416. The plaintiffs complain that Allegheny's Title V operating permit applications were deficient, as they did not include: (1) a citation and

12

description of applicable best available control technology ("BACT") and NSPS air pollution control requirements, (2) information that was necessary to implement and enforce other requirements of the CAA, including information about the modifications relevant to determining the applicability of BACT and/or NSPS; or (3) a compliance plan. Allegheny is also said to have failed to submit a certification of compliance with applicable requirements that addressed its failure to meet BACT and NSPS requirements. See, first amended complaint at ¶¶ 260-261, 271-272, 352-353, 363-364.[6]

In moving to dismiss claims 13-14, 21-22 and 25-26, Allegheny argues the claims constitute an impermissible collateral attack on facially valid Title V permits issued by PADEP. According to Allegheny, PADEP issued the Title V permits for its facilities following a statutorily-mandated review process which included public notice, opportunity for public review and comment, and EPA review, at which time neither PADEP, nor EPA objected to, or challenged issuance of the permits. Allegheny avers that as the holder of validly-issued Title V permits, claims 13-14, 21-22 and 25-26 should have been directed against PADEP, the permit issuer, during the administrative permitting process, rather than against it for operating its facilities pursuant to validly-issued permits.

In support of its argument, Allegheny cites National Parks Conservation Ass'n. v. TVA, 175 F.Supp.2d 1071 (E.D.Tenn. 2001), where the Court held that "the Clean Air Act provides no cause of action for a citizen suit collaterally attacking a permit issued by the State's

---

6. Allegheny's Title V operating permit applications said to be deficient were submitted in 1995 for its Armstrong facility, where the Title V permit issued on July 31, 2001 (first amended complaint at ¶¶ 260, 263, 271, 274), the Hatfield Ferry facility, where the Title V permit issued on November 29, 2001 (¶¶ 352, 355, 363, 366), and the Mitchell facility, where the Title V permit issued on September 5, 2002 (¶¶ 400, 403, 411, 414).

enforcement agency." Id. at 1079. In so ruling, the Court relied on the fact that TVA, the operator of the plants, had committed no violation other than acting pursuant to facially valid permits issued to it by the state enforcement agency. The Court stated:

> Plaintiff has not identified a single exceedance that has not been approved by TDEC [the Tennessee Department of Environment and Conservation] under TVA's facially valid permits. Under the circumstances, it is clear that plaintiff is not alleging that TVA violated any of the terms of the TDEC permits, but rather is attacking the legality of the permits issued by the Tennessee state enforcement agency. As such, plaintiff's lawsuit is in effect a collateral attack on a facially valid permit issued by the state enforcement agency.

Id. at 1078.

In a similar vein, the Court of Appeals for the Seventh Circuit stated: "it is an unsettled question whether operating under a duly issued permit, albeit one that should not have been issued because it failed to impose requirements found in a state implementation plan, violates that plan." United States v. AM General Corp., 34 F.3d 472, 474 (7th Cir. 1994). The Court opined:

> ... [W]e cannot find in the text of the Clean Air Act, or elsewhere, any indication that Congress expressly or by implication meant to authorize the EPA to mount a collateral attack on a permit by bringing a civil penalty action as many as five years after the permit had been granted and the modification implemented, ... by which time a defendant would have accrued potential liability in excess of $40 million even though it had been operating under a permit valid on its face and never before challenged...

Id. at 475.

In opposing dismissal of these claims, the plaintiffs assert they are not collaterally attacking issuance of the Title V permits; rather, they bring these claims due to Allegheny's

14

failure to include in its Title V permit applications emissions limitations and other operating conditions necessary to assure compliance with the CAA and Pennsylvania law. According to the plaintiffs, the crux of these claims is that Allegheny did not report its modifications in PSD or Title V permit applications, such that PADEP never authorized it to operate its Plants without meeting BACT and other emission standards.

Under EPA regulations, "[a]ny applicant [for a Title V permit] who fails to submit any relevant facts or who has submitted incorrect information in a permit application shall, upon becoming aware of such failure or incorrect submittal, promptly submit such supplementary facts or corrected information." 40 C.F.R. §§ 70.5(b) & 71.5(b). Further, "an applicant shall provide additional information as necessary to address any requirements that become applicable to the source after the date it filed a complete application but prior to release of a draft permit." Id.

The plaintiffs contend that subsequent to the filing of Allegheny's completed Title V applications at issue, Allegheny failed to supplement the applications with information regarding the modifications at its facilities, including the air pollution control standards that became applicable as a result of its modifications. See, first amended complaint at ¶¶ 262, 273, 354, 365, 402, 413. The plaintiffs aver that because Allegheny failed to provide this information, the Title V operating permits issued for its facilities did not include all applicable requirements, such that it has been operating its facilities in violation of federal and state law. See, first amended complaint at ¶¶ 263-265, 274-276, 355-357, 366-368, 403-405, 414-416.

Since it is unlawful for any person to violate any requirement of a Title V permit, or to operate a source subject to Title V regulations that is not in compliance with all applicable requirements of a Title V operating permit, 42 U.S.C. § 7661a(a), 40 C.F.R. §§ 70.1(b), 71.1(b)

15

& 71.12, claims 13, 14, 21, 22, 25 and 26 set forth viable claims which should not be dismissed.

<u>Should claims 25-26 be dismissed for noncompliance with the CAA's notice requirement</u>?

In claims 25-26, the plaintiffs contend that Unit 3 at Allegheny's Mitchell facility became subject to federal BACT emission limitations by virtue of modifications performed at that Unit in 1994. The plaintiffs complain that Allegheny submitted a Title V operating permit application for the Mitchell facility in 1995 that did not include a citation and description of applicable BACT air pollution control requirements, or other information that was necessary to implement and enforce requirements of the CAA. Thus, the plaintiffs assert that the Title V operating permit issued for the facility on September 5, 2002 did not include all applicable requirements, such that Allegheny has been operating its facility in violation of the CAA and Pennsylvania law. See, first amended complaint at ¶¶ 399-405, 410-416.

In moving to dismiss these claims, Allegheny argues that claims 25-26 cannot lie, as the plaintiffs failed to comply with the CAA's mandatory notice requirement. In relevant part, the notice requirement at 42 U.S.C. § 7604(b)(1)(A) provides: "No action may be commenced –

> prior to 60 days after the plaintiff has given notice of the
> violation (i) to the Administrator, (ii) to the State in which
> the violation occurs, and (iii) to any alleged violator of the
> [emissions] standard [or] limitation...

The contents of such a notice concerning violation of an emission standard or violation shall include the following:

> sufficient information to permit the recipient to identify the
> specific standard, limitation, or order which has allegedly been
> violated, the activity alleged to be in violation, the person or
> persons responsible for the alleged violation, the location of
> the alleged violation, the date or dates of such violation, and the
> full name and address of the person giving the notice.

40 C.F.R. § 54.3(b).

Allegheny argues that the plaintiffs failed to comply with the CAA's above notice requirement concerning their claims 25-26. According to Allegheny, the plaintiffs sent it two notice of intent to sue letters for a number of its projects undertaken in Pennsylvania which allegedly violated the CAA, but neither of the notice letters contain any reference to the 1994 project at the Mitchell facility, which is the subject of claims 25-26.[7]

The plaintiffs' notice of intent to sue letters -- dated May 20, 2004 and August 3, 2005 -- provided Allegheny with sufficient information to satisfy the CAA's notice requirement. In pertinent part, the plaintiffs' May 20, 2004 notice letter provided:

> * **Mitchell** plant in Courtney, Pennsylvania: Our investigation indicates that [Allegheny] may have violated the PSD and nonattainment NSR requirements in or around 1996, when they replaced the ash hopper tube panels and the feedwater heaters."[8]

Similarly, the plaintiffs' August 3, 2005 notice letter apprised Allegheny that "replacement of ash hopper tube panels and the feedwater heaters at Mitchell in 1996" violated the PSD and NNSR requirements of the CAA.[9]

It appears that Allegheny is challenging the sufficiency of these notice letters because they refer to a "1996" project at the Mitchell facility as violating PSD and NNSR requirements, whereas claims 25-26 reference a "1994" project at Mitchell which led to the complained-of violations of federal and state law. However, for purposes of the above-cited

---

7. See, Exhibit C to the defendants' brief in support of their motion to dismiss.

8. Id. at p. 6 (emphasis in original).

9. Id. at p. 13.

notice requirements, it is sufficient if a notice letter "limits the alleged violations to a discrete period of time", or to "a very general range of dates". <u>Fried v. Sungard Recovery Serv., Inc.</u>, 900 F.Supp. 758, 765 (E.D.Pa. 1995) (finding a notice letter sufficient which specified that "violations occurred repeatedly between 1990 and 1994"). Indeed, "specific dates of alleged violations are not necessary for adequate notice, a discrete specific time frame is." <u>Brandywine Indus. Paper v. Chemical Leaman Tank Lines</u>, 1998 WL 855502, * 4 (E.D.Pa., Dec. 10, 1998), citing <u>Fried</u>.

Thus, we find that the plaintiffs' May 20, 2004 notice letter -- specifying an alleged violation "in or around 1996" -- provided a sufficient time frame to enable Allegheny to identify the complained-of project. Since the plaintiffs' notice letters to Allegheny met the other criteria set forth in 40 C.F.R. § 54.3(b), they satisfied the CAA's notice requirements.[10]

Therefore, it is recommended that the defendants' motion to dismiss the plaintiffs' claims for relief 1-3, 6-9 and 12-26 of the first amended complaint be denied.

Within ten (10) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/ ROBERT C. MITCHELL
United States Magistrate Judge

Dated: April 19, 2006

---

10. We note that claim 26 is not even subject to the CAA's notice requirement, as it is brought pursuant to Pennsylvania law. See, first amended complaint at ¶ 418.